***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Ledford with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At such time, an employment relationship existed between Plaintiff and Employer-Defendant.
3. American Home Assurance (Claims Management Inc. as the servicing agent) was the carrier on the risk for Employer-Defendant.
4. Plaintiff had an average weekly wage of $434.00, which results in a compensation rate of $289.35.
5. The parties submitted the following documents, which were received as evidence:
 a. The Pre-Trial Agreement as Stipulated Exhibit 1.
 b. Various documents including IC Forms and Medical Records, collectively marked and received as Stipulated Exhibit 2.
 c. Post-hearing, the transcripts of the physicians' depositions were received.
 ***********
As set forth in the Pre-Trial Agreement and this Opinion and Award, the Commission addresses the following
 ISSUE
1. Whether the Plaintiff's neck, back and vision problems were caused or materially aggravated by the work injury of December 26, 2007?
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 42 years of age on the hearing date before the Deputy Commissioner and continued to work at Wal-Mart, where he had been employed for almost eight years. *Page 3 
2. Plaintiff sustained a compensable injury by accident on December 26, 2007, when he fell to the floor in the store, landing on his buttocks and striking his head.
3. Plaintiff was treated the next day at Pro Med, where he underwent x-rays and a CT scan of his head. Plaintiff was assessed with a cervical strain, lumbar strain, sciatica, a concussion with brief loss of consciousness (LOC) and acute sinusitis as identified on the scan.
4. On January 2, 2008, Plaintiff was examined by Dr. Daniel Cannon, who practices family medicine. Plaintiff related his accident and complained of pain in both arms, the left leg, and some numbness in all three of those extremities, as well as headache. Dr. Cannon performed a "thorough neurologic exam" with normal results, and assessed Plaintiff with primarily muscular injuries, neck strain and low back strain, with no neurologic damage, and concussion. Dr. Cannon prescribed medication for inflammation and muscle relaxants and gave Plaintiff light duty restrictions, or per his testimony, alternatively may have put him out of work.
5. At Plaintiff's next examination with Dr. Cannon on January 16, he complained of neck and arm pain. He also complained of persistent headache and fuzzy thinking, which Dr. Cannon testified are classic symptoms of concussion. When Dr. Cannon saw Plaintiff on January 25, he complained of double vision. At that time, Dr. Cannon was not aware that Plaintiff had a pre-existing congenital eye problem.
6. An MRI of Plaintiff's cervical spine was done on January 27, 2008 and revealed mild narrowing of the disc space at C3-4, C4-5, and C5-6. There was no evidence of nerve impingement at any level. A lumbar spine MRI was also taken on January 27, 2008. The MRI revealed a small right-sided disc protrusion adjacent to the right S1 nerve root. There was no evidence for nerve root impingement at any other level on the left. *Page 4 
7. On February 13, 2008, Plaintiff was seen by Dr. Michael Goebel of Blue Ridge Bone Joint Clinic for a consultation. Dr. Goebel reviewed Plaintiff's cervical and lumbar MRI's, which he considered "essentially normal for his age with only mild degeneration of the disc at L5-S1 with a right-sided disc bulge." Dr. Goebel saw no significant findings on the left to explain Plaintiff's symptoms. Dr. Goebel recommended that Plaintiff participate in physical therapy and released him to return to full work duties, noting that Plaintiff was much more symptomatic than he should be.
8. Plaintiff was thereafter seen by Dr. Ralph Loomis of Mountain Neurological Spine Center on February 18, 2008. Dr. Loomis reviewed Plaintiff's January 27, 2008 lumbar MRI scan, and noted it showed a small, right-sided disc herniation at L5-S1 with slight mass effect on the S1 nerve root, which would not explain Plaintiff's symptoms into the left leg. Dr. Loomis ordered a lumbar myelogram/CT scan to rule out a herniated disc at left L4-5 because the MRI did not fit with Plaintiff's exam or symptoms.
9. A lumbar CT scan was performed on March 3, 2008, revealing only a very slight bulge of the disc at L4-5. Upon reviewing these results, Dr. Loomis determined this disc bulge "would not in any way explain his symptoms." Dr. Loomis determined there was no need for surgery and referred Plaintiff to his partner, Dr. Margaret Burke for physiatry evaluation. Dr. Loomis did not make any reference to work restrictions or Plaintiff's ability to work.
10. Dr. Cannon saw Plaintiff on March 5, 2009 and performed a careful eye examination, including a field of vision exam, a fundoscopic exam, exam of the retina and optic nerve. All tests were normal, and "unchanged" from his previous exam. Dr. Cannon would defer to Dr. Wiggins with regard to the cause of Plaintiff's double vision. *Page 5 
11. On March 25, 2008, Dr. Cannon assigned Plaintiff a ten pound lifting restriction and indicated that Plaintiff should return to work. Dr. Cannon complied with Plaintiff's requested that he restrict him to daytime work only due to complaints of double vision at night.
12. Despite being released to return work by all the physicians who had seen him, Plaintiff did not return to work until May 17, 2008.
13. On July 17, 2008, Plaintiff was seen by Dr. Stewart Harley, orthopaedic surgeon, for an Independent Medical Evaluation. Dr. Harley examined Plaintiff and reviewed the cervical and lumbar spine MRI of January 27, 2008 and the CAT scan myelogram of the lumbar spine dated March 3, 2008. Dr. Harley noted a small right-sided disc protrusion adjacent to the right S1 nerve root, possibly slightly impinging the S1 nerve root. This is consistent with the observations and assessment previously made by Dr. Loomis.
14. Per Dr. Harley, the lumbar MRI showed age-related degenerative disc disease, not related to Plaintiff's accident. Dr. Harley found nothing on the left impinging the left nerve root, which would be causing Plaintiff's left-sided symptoms.
15. With regard to the cervical area, Dr. Harley noted mild degenerative changes in the cervical spine, with no evidence of any nerve impingement at any level. Per Dr. Harley, these changes were also age-related and not related to the December 26, 2007 injury.
16. Dr. Harley also reviewed prior records from Dr. Robert Wiggins at Asheville Eye Associates which showed that Plaintiff had been diagnosed with exotropia (lazy eye) of the left eye on April 3, 1996. Plaintiff had corrective surgery on his left eye to correct this muscle imbalance on April 4, 1996. Dr. Harley also noted Plaintiff's childhood history of strabismus and associated visual difficulty. Per his testimony, Dr. Harley would defer to the assessment of the ophthalmologist concerning Plaintiff's complaints of double vision. *Page 6 
17. Dr. Harley diagnosed Plaintiff with a closed head injury, with a negative CAT scan for cerebral injury and no apparent residual from the closed head injury. He also diagnosed Plaintiff with neck, arm, hand pain, paresthesias, and weakness by history without significant nerve root impingement on the cervical MRI. Dr. Harley assessed left leg pain, with history of weakness around the left ankle. The degenerative changes he noted were age-related and not injury related.
18. Dr. Harley concluded that Plaintiff could return to work. He would impose lifting restrictions of twenty pounds due to Plaintiff's pre-existing degenerative disc disease, and otherwise did not restrict Plaintiff's hours. He determined that Plaintiff was at maximum medical improvement with regard to both his cervical and lumbar spine. Per Dr. Harley, while Plaintiff's fall may have made his pre-existing degenerative disc disease symptomatic, it did not accelerate the degenerative changes already present. Dr. Harley concluded that there was no permanent impairment to Plaintiff's cervical or lumbar spine. Dr. Harley could not relate Plaintiff's lower left extremity complaints to his injury by accident.
19. On August 18, 2008, Plaintiff was seen by Dr. Robert Wiggins of Asheville Eye Associates. Per the medical notes, Plaintiff had last been seen there in 1997, and assessed with a childhood history of strabismus, and small angle exotropia and right hypotropia.
20. Dr. Wiggins diagnosed Plaintiff with monocular diplopia in the right eye. Dr. Wiggins could not see any source for the monocular diplopia other than Plaintiff's high astigmatic refractive error, which had been diagnosed as early as 1996. Per Dr. Wiggins, monocular diplopia is associated with a problem within the eye itself rather than a neurologic problem or misalignment, while binocular double vision, which Plaintiff does not have, is more often associated with head injuries. Dr. Wiggins determined that the head injury was not causing *Page 7 
Plaintiff's monocular double vision. Dr. Wiggins testified that double vision can conceivably lead to headaches.
21. Dr. Cannon last saw Plaintiff in relation to his work accident on September 17, 2008. As he testified, on that date, Dr. Cannon lifted Plaintiff's work restrictions, allowing him to return to full duty work.
22. Based upon the greater weight of the medical evidence, as a result of his fall of December 26, 2007, Plaintiff sustained a mild concussion, cervical strain and lumbar strain. The fall aggravated his pre-existing degenerative disc disease and caused Plaintiff to develop pain symptoms. The fall did not accelerate the degenerative process. The greater weight of the evidence fails to establish that Plaintiff's ongoing left leg complaints are causally related to the injury by accident of December 26, 2007. As noted by Dr. Loomis and Dr. Harley, Plaintiff's left leg symptoms can not be explained by objective examination findings or the MRI results.
23. With regard to further treatment, neither Dr. Loomis nor Dr. Harley planned to continue Plaintiff under their care. Dr. Harley released Plaintiff and Dr. Loomis noted no surgery was needed. Dr. Loomis had referred Plaintiff to his partner Dr. Margaret Burke, noting that they may be able to offer him some physical therapy. There is no record that Plaintiff ever went to see Dr. Burke or that physical therapy was actually prescribed by Dr. Burke. Dr. Goebel recommended physical therapy. Dr. Harley testified that he was not a treating physician and therefore did not prescribe physical therapy or other treatment. Dr. Harley voiced no opposition to a course of physical therapy, but would defer to a treating physician who recommended such a course of treatment.
24. Plaintiff was under medical restrictions or written out of work (by Dr. Cannon) until February 13, 2008. As of February 13, 2008, Dr. Goebel released Plaintiff to return to work *Page 8 
with no restrictions. As of March 25, 2008, Dr. Cannon also had released Plaintiff to return to work with restrictions. The evidence fails to show any reason Plaintiff failed to return to work prior to May 17, 2008, despite having releases for return to work from two physicians, one for light duty and one for full duty.
25. As a consequence of his injury by accident and light duty restrictions from Dr. Cannon and / or Dr. Cannon's removal from work, Plaintiff was unable to earn wages in his regular employment from December 27, 2007 until he had been thoroughly evaluated and was released to return to work on February 13, 2008 by Dr. Michael Goebel of Blue Ridge Bone and Joint Clinic. The undersigned has relied upon the release by Dr. Goebel, as he was seen in consultation and not for a one-time independent medical examination. The undersigned also relies upon Dr. Goebel for his expertise in orthopaedic medicine, as compared to Dr. Cannon, whose specialty is family practice.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On December 26, 2007, Plaintiff sustained an injury by accident arising out of and in the course of his employment with the Defendant-Employer when he fell in the store, sustaining a concussion and cervical and lumbar strain, and aggravation of his pre-existing degenerative disc disease which became symptomatic. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the medical evidence fails to establish that Plaintiff's ongoing complaints of pain and weakness in his left leg are causally related to the injury by *Page 9 
accident of December 26, 2007. Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
3. Defendants are responsible for payment for all medical treatment reasonably necessary for Plaintiff's injuries sustained in the accident of December 26, 2007. Defendants are not responsible for payment for ongoing treatment of Plaintiff's left leg symptoms, as the same has not been established by the opinion of competent medical authority to be causally related to the compensable injury by accident. N.C. Gen. Stat. §§ 97-2(19), 97-25; Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
4. Plaintiff may benefit from additional medical treatment such as physical therapy and if the same is prescribed by authorized treating physicians, Defendants shall be responsible for payment for the same. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. As a consequence of his injury by accident, Plaintiff was under light duty restrictions and was unable to perform the regular duties of his employment and was temporarily totally disabled from December 27, 2007 through February 13, 2008, during which time he is entitled to receive compensation. Defendants are responsible for payment of compensation to Plaintiff at the rate of $289.35 per week during this period. N.C. Gen. Stat. § 97-29.
6. The evidence fails to establish that Plaintiff has otherwise suffered a diminution of his earning capacity due to his injury by accident since returning to work. He has not been restricted in his work hours by any of the physicians. Therefore his claim for further partial disability benefits must be denied. N.C. Gen. Stat. § 97-30.
7. While Dr. Harley has given an impairment rating of zero for Plaintiff's lumbar and cervical condition, Plaintiff has the right to seek a second opinion on said rating at Defendant's expense. N.C. Gen. Stat. § 97-27. *Page 10 
8. The greater weight of the medical evidence fails to establish any causal connection between Plaintiff's complaints of double vision and his accident of December 26, 2007, but rather the same has been shown to be due to pre-existing conditions. Therefore, any claim for treatment or benefits related to the same must be denied.Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay Plaintiff's medical expenses for reasonably necessary treatment of his lumbar and cervical strains, including the assessments and tests as ordered by Dr. Goebel, Dr. Loomis, Dr. Cannon, and Dr. Harley.
2. Defendants shall pay for such further medical treatment relating to Plaintiff's lumbar and cervical strains as may be reasonably necessary as prescribed by an authorized treating physician, including any physical therapy that may be recommended.
3. Plaintiff's claim for ongoing treatment or benefits related to his left leg complaints is DENIED and Defendants are not responsible for any ongoing medical treatment for Plaintiff's left leg.
4. Plaintiff's claim for any injury to his eyes is DENIED. Defendants are not responsible for payment for any ongoing treatment for Plaintiff's eyes or complaints of double vision. Defendants shall pay for the initial examination performed by Dr. Wiggins as a reasonably necessary assessment of whether the double vision complaints were related to Plaintiff's injury by accident and per the referral of Dr. Cannon. *Page 11 
5. Defendants shall pay Plaintiff compensation at the rate of $289.35 per week from December 27, 2007 through February 13, 2008 as temporary total disability compensation. Such compensation has accrued and shall be paid in a lump sum, subject to the attorneys' fee.
6. A reasonable attorneys' fee of twenty-five percent of the compensation awarded to Plaintiff is approved for his attorney and shall be deducted from the lump sum due Plaintiff and paid directly to his attorney.
7. Plaintiff's claim for further benefits is hereby DENIED.
8. Defendants shall pay the cost.
9. This the 5th day of February, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/___________________ PAMELA YOUNG CHAIR
S/___________________ STACI T. MEYER COMMISSIONER *Page 1